**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **REINALDO LOPEZ ARMAS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-131-KC** |
| | § | |
| **PAM BONDI et al.,** | § | |
| | § | |
| **Respondents.** | § | |

<u>**SHOW CAUSE ORDER**</u>

On this day, the Court considered Reinaldo Lopez Armas' Petition for a Writ of Habeas Corpus, ECF No. 1, and Motion for Preliminary Injunction ("Motion"), ECF No. 2. Lopez Armas is detained at the El Paso Processing Center in El Paso, Texas. *Id.* ¶ 2. He argues that his detention is unlawful and asks the Court to order his immediate release. *Id.* ¶¶ 36–49; *id.* at 9.

I.    **BACKGROUND**

Lopez Armas is a Cuban citizen who came to the United States in 1994 and received Lawful Permanent Resident ("LPR") status in 1995. *Id.* ¶ 13. He appears to have lost his LPR status as a result of a criminal conviction in 2005. *See id.* ¶ 14. In 2008, Lopez Armas was convicted of a drug offense and sentenced to twelve years of incarceration. *Id.* ¶ 17. And in 2009, while incarcerated, he received a final order of removal to Cuba. *Id.* ¶ 19. In 2020, before his release from prison, Lopez Armas was interviewed by Immigration and Customs Enforcement ("ICE"). *Id.* ¶ 20. ICE "decided to not detain [him] due to [his] medical condition that they deemed a liability and because [he] was not removable to . . . Cuba." *Id.* And, upon his release, he was placed under an Order of Supervision ("OSUP"). *Id.* ¶ 21. Since then, Lopez

Armas has "lived a quiet life" and has "always complied with [his] OSUP requirements." *Id.* ¶¶ 22, 27.

On June 25, 2025, while reporting for his annual check-in with ICE, Lopez Armas was arrested and re-detained. *Id.* ¶ 28. He was not given "any cause, . . . did not violate [his OSUP] and ICE did not obtain travel documents." *Id.* Since his re-detention, "ICE has attempted to remove [him] to Mexico but Mexico has not provided any documentation." *Id.* ¶ 29. Lopez Armas alleges that ICE drove him and other detainees to the Mexican border and "attempted to force [them] to get out of the vehicle to cross into Mexico." *Id.* ¶ 30. But when he "requested some form of documentation from Mexico [ICE] did not produce anything to show the legality of what they were attempting to do." *Id.* ¶ 30. Lopez Armas was returned to the detention facility after expressing a "concern[] for [his] well-being." *Id.* ¶ 31.

Lopez Armas has now been detained for over six months "without any reason to believe that removal is likely in the reasonably foreseeable future." *Id.* ¶¶ 28, 32.

## II.    DISCUSSION

### A.    SHOW CAUSE

"[A]n alien [may] rely on 28 U.S.C. § 2241 to challenge [their] detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Once a habeas application is filed, a court "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entailed thereto." The statute also provides that a response to the writ or show cause order "shall be returned within three days," unless the court finds good cause to extend the deadline. 28 U.S.C. § 2243.

Generally, when a noncitizen is ordered removed from the United States, removal should occur within ninety days.  8 U.S.C. § 1231(a)(1)(A).  That removal period ordinarily begins when the noncitizen is subject to a final order of removal.  *See id.* § 1231(a)(1)(B).  During this removal period, "the Attorney General shall detain the alien."  *Id.* § 1231(a)(2)(A).  The removal period may be extended in at least three circumstances.  Relevant here, a noncitizen may be detained beyond the removal period if he is "(1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order."  *Johnson v. Guzman Chaves*, 594 U.S. 523, 528–29 (2021) (citing 8 U.S.C. § 1231(a)(6)).

If any of these grounds apply, the statute imposes no limit on the time a person may be detained.  Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem" the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal.  *Zadvydas*, 533 U.S. at 689–90.  This period is presumptively six months.  *Id.* at 701.  After the presumptively reasonable period and once the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must rebut this showing or release the noncitizen.  *Id.*

Lopez Armas alleges that he has been detained for more than six months.  Pet. ¶ 32.  And that he was previously unremovable to Cuba and ICE has not obtained travel documents from Cuba or Mexico on his behalf.  *Id.* ¶¶ 20, 28, 29–31.  If these allegations are true, Lopez Armas likely meets his burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 689–90.

3

Thus, Respondents must rebut this showing by either demonstrating that Lopez Armas' removal is likely in the reasonably foreseeable future or deporting him.

Accordingly, the Court determines that Respondents must show cause why the Court should not grant Lopez Armas the relief he seeks by January 30, 2026.

### B.    PRELIMINARY INJUNCTION & TEMPORARY RESTRAINING ORDER

Lopez Armas separately seeks a Preliminary Injunction and Temporary Restraining Order for his immediate release.  Mot. ¶¶ 4–5, 20.  The Court can prevent Respondents from transferring Lopez Armas outside of the district, in the interest of preserving the status quo and the Court's ability to fully assess this case on the merits.  *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief."); *cf. Brownback v. King*, 592 U.S. 209, 218-19 (2021).  As for preventing Lopez Armas' removal from the country, this request is at odds with the basis of his claims—that his removal is not reasonably foreseeable.  *See* Pet. ¶ 32.  There is nothing to suggest that Lopez Armas' final removal order cannot be enforced or that he cannot be removed from the United States if travel documents from another country are obtained.  *See generally id.*  Because Lopez Armas' removal would be permissible and would moot this case, the Court does not find it appropriate to prevent his removal from the country.

Accordingly, Respondents may not transfer Lopez Armas out of the El Paso Division of the Western District of Texas during the pendency of this case, unless Lopez Armas is lawfully removed from the United States.[1]

---

[1] This Order is not issued as a temporary restraining order ("TRO") but instead under the Court's inherent power to preserve its ability to hear the case.  *See, e.g.*, Order Concerning Service of Petition and Stay of Transfer or Removal, *Teixeira v. ICE Burlington*, No. 25-cv-11631 (D. Mass. June 5, 2025), ECF No. 5; *see also Alves v. U.S. Dep't of Just.*, No. 3-25-cv-306-KC, 2025 WL 2629763, at *5 (W.D. Tex. Sept. 12,

## II.    CONCLUSION

Accordingly, Respondents are **ORDERED** to **SHOW CAUSE** by <u>no later than</u> <u>January 30, 2026</u>, why the application for a writ of habeas corpus should not be granted and specify:

(1)  What concrete steps have been taken to effectuate Lopez Armas' removal,

(2)  What obstacles exist to effectuating Lopez Armas' removal, including Lopez Armas' medical condition,

(3)  What concrete steps have been taken to address the existing obstacles, such as identifying a specific third country for Lopez Armas' removal and applying to that country for travel documents, and

(4)  The anticipated timeline for Lopez Armas' removal from the United States.

The Court will set this matter for a hearing and order additional briefing deadlines, if necessary, upon review of the show cause response.

**IT IS FURTHER ORDERED** that Lopez Armas' Motion, ECF No. 2, is **DENIED**, but the Court **ORDERS**, under its inherent authority to preserve and assess its own jurisdiction, that Respondents **SHALL NOT** transfer Lopez Armas to any facility outside the boundaries of the El Paso Division of the Western District of Texas, until the Court orders otherwise or this case is closed, unless Lopez Armas is lawfully removed from the United States.

**IT IS FURTHER ORDERED** that to the extent Respondents have not been served, the Clerk of the Court shall **SERVE** copies of the Petition and this Order upon Respondents through their counsel.  *See* Habeas Rule 4 ("[T]he clerk must serve a copy of the petition and any order on the respondent[s] . . . .").

---

2025).  To the extent a bond may be required, it is waived.  *See, e.g.*, *Sepulveda Ayala v. Noem*, No. 25-cv-5185, 2025 WL 1207655, at *4 (W.D. Wash. Apr. 26, 2025).

**SO ORDERED**.

**SIGNED this 26th day of January, 2026.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE